UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL F. SALVANA, M.D.,

                               Plaintiff,                    5:21-cv-735 (BKS/ML)

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,
CARL KOENIGSMANN, M.D., JOHN MORLEY, M.D.,
DAVID S. DINELLO, M.D., PATRICIA HENDERSON,
R.N., and BETTY M. PARKMOND, R.N.,

                               Defendants.

---

**Appearances:**

*For Plaintiff:*
Carlo A. C. de Oliveira
Cooper Erving & Savage LLP
39 North Pearl Street, 4th Floor
Albany, NY 12207

Richard Condit
Mehri & Skalet, PLLC
2000 K Street, NW, Suite 325
Washington, DC 20006

*For Defendants:*
Letitia James
New York State Attorney General
Jorge A. Rodriguez
Assistant Attorney General, Of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Michael F. Salvana, M.D., a former Clinical Physician and Facility Health Services Director with the New York State Department of Corrections and Community Supervision ("DOCCS"), brought this action against DOCCS as well as former DOCCS Deputy Commissioner and Chief Medical Officer Carl Koenigsmann, M.D.; current DOCCS Deputy Commissioner and Chief Medical Officer John Morley, M.D.; Regional Medical Director for Elmira and Oneida "HUBS" David S. Dinello, M.D.; DOCCS Deputy Superintendent for Health Services Patricia Henderson, R.N.; and DOCCS Nurse Director Betty M. Parkmond, R.N. (*See generally* Dkt. No. 1 (complaint)). On August 10, 2022 the Court issued a ruling on Defendants' motion to dismiss the complaint in which it (1) dismissed Plaintiff's Equal Protection and state-law claims, (2) dismissed Plaintiff's claims against DOCCS as barred by the Eleventh Amendment; and (3) dismissed Plaintiff's claims against Defendants Koenigsmann and Parkmond for lack of personal involvement. (Dkt. No. 26). Presently before the Court are Plaintiff's motion for reconsideration of the Court's decision, (Dkt. No. 33), and Plaintiff's motion for leave to file an amended complaint, (Dkt. No. 31). Defendants oppose both motions. (Dkt. No. 36). For the following reasons, Plaintiff's motion for reconsideration is denied and Plaintiff's motion for leave to amend the complaint is granted in part and denied in part.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The Court assumes familiarity with the procedural and factual background of this case, as set forth in its August 10, 2022 decision. (*See* Dkt. No. 26).

### III.   MOTION FOR RECONSIDERATION

#### A.   Standard of Review

In general, a motion for reconsideration may only be granted upon one of three grounds: (1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice. *United States v. Zhu*, 41 F. Supp. 3d 341, 342 (S.D.N.Y. 2014) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also Shannon v. Verizon N.Y., Inc.*, 519 F. Supp. 2d 304, 307 (N.D.N.Y. 2007). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). When adjudicating a motion for reconsideration, a court need not consider arguments that were raised for the first time in the pending motion. *See Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015); *Gun Hill Rd. Serv. Station, Inc. v. ExxonMobil Oil Corp.*, No. 08-cv-7956, 2013 WL 1804493, at *1, 2013 U.S. Dist. LEXIS 63207, at *3–4 (S.D.N.Y. Apr. 18, 2013). Moreover, reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Gun Hill Rd. Serv. Station*, 2013 WL 1804493, at *1, 2013 U.S. Dist. LEXIS 63207, at *3 (citing *Shrader*, 70 F.3d at 257). "The standard for reconsideration is strict and is committed to the discretion of the court." *SEC v. Wojeski*, 752 F. Supp. 2d 220, 223 (N.D.N.Y. 2010), *aff'd sub nom. Smith v. SEC*, 432 F. App'x 10 (2d Cir. 2011); *see also New York v. Parenteau*, 382 F. App'x 49, 50 (2d Cir. 2010) (summary order) ("A motion for reconsideration is 'generally not favored and is properly granted only upon a showing of exceptional circumstances.'" (citation omitted)).

**B.     Analysis**

Plaintiff moves for reconsideration of that portion of the Court's decision dismissing his Equal Protection claim as duplicative of his First Amendment retaliation claim, arguing that there is a "need to correct a clear error of law or prevent manifest injustice." (Dkt. No. 33-2, at 2–3). Plaintiff argues that the "cases relied upon by the Court" "do not support dismissal" of his Equal Protection claim and that dismissal at this stage would "materially prejudice" him. (*Id.* at 3). Defendants respond that Plaintiff has not met his burden of showing that the Court erred in dismissing his Equal Protection claim and that his claim fails for failure to allege facts "indicating that the motivating factor for the purported adverse actions was anything other than his decision to speak out and otherwise oppose the [Medications With Abuse Potential ("MWAP")] policy." (Dkt. No. 36, at 8–11).

The Court concludes that Plaintiff's criticisms of the three cases the Court cited to support dismissal of his Equal Protection claim as duplicative of his First Amendment retaliation claim do not warrant reconsideration.[1] First, the Court cited *Best Payphones, Inc. v. Dobrin*, in which a payphone company sued the City of New York and individual defendants alleging constitutional violations "arising from the City's regulation of pay phones." 410 F. Supp. 3d 457, 464–65 (E.D.N.Y. 2019). The Eastern District noted that "[c]ourts in the Second Circuit have dismissed equal-protection claims that merely restate First Amendment retaliation claims" and dismissed the plaintiff's Equal Protection claim which was "based on its protected First

---

[1] Furthermore, Plaintiff has not pointed to "controlling decisions or data that the court overlooked." *Gun Hill Rd. Serv. Station*, 2013 WL 1804493, at *1, 2013 U.S. Dist. LEXIS 63207, at *3. As the Court pointed out in its decision on Defendants' motion to dismiss, the cases Plaintiff relied on to argue that his First Amendment and Equal Protection claims were not duplicative "did not involve First Amendment and Equal Protection claims." (Dkt. No. 26, at 37 (noting that the relevant cases instead involved state-law tort claims)). Even in his motion for reconsideration, Plaintiff still has not cited a supportive, on-point case regarding whether a First Amendment retaliation claim and a *LeClair* selective enforcement Equal Protection claim are duplicative.

Amendment activity and not personal animus against its owner." *Id.* at 483–84 (citations omitted). Plaintiff argues that *Best Payphones* is distinguishable because the plaintiff there "never asserted any equal-protection claim based on personal animus," *see id.* at 483, while Plaintiff has. (Dkt. No. 33-2, at 4–5). Plaintiff points to the complaint's allegations that Defendants were "vindictive" and "intentionally treated [Plaintiff] differently than other similarly situated doctors and medical providers." (*Id.* (citing Dkt. No. 1, ¶¶ 160–61)). However, the Court agrees with Defendants that Plaintiff has not alleged that Defendants' allegedly vindictive conduct was "tied to anything other than Plaintiff having allegedly engaged in [protected] activity." (Dkt. No. 36, at 9; *see* Dkt. No. 26, at 36–37 (noting that Plaintiff's Equal Protection claim was premised on differential treatment *due to* his alleged First Amendment activity)). Plaintiff's motion for reconsideration likewise asserts that his claim is "focused on Defendants' conscious decision *to retaliate* by treating him differently from other health care providers" who objected to the MWAP policy. (Dkt. No. 33-2, at 5 (emphasis added)). The only reasonable reading of the complaint is that Defendants' alleged conduct was motivated by Plaintiff's protected activity. Thus, because his Equal Protection claim is premised on the same underlying facts as his First Amendment retaliation claim, it is duplicative. *See Best Payphones*, 410 F. Supp. 3d at 484 (dismissing Equal Protection claim as duplicative where the First Amendment provided the plaintiff "with an explicit textual source for his alleged constitutional wrongs" (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989))).[2]

---

[2] Stated differently, Plaintiff has not plausibly alleged that the alleged selective treatment was motivated by personal animus unconnected from his alleged protected activity. The Court also notes that the complaint's allegation that there was "no rational basis for the treatment Plaintiff received," (Dkt. No. 1, ¶ 162), would only be relevant to a class-of-one claim brought pursuant to *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Here, however, Plaintiff has asserted a selective enforcement Equal Protection claim pursuant to *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980).

Second, Plaintiff argues that *Frisenda v. Incorporated Village of Malverne*, 775 F. Supp. 2d 486 (E.D.N.Y. 2011), does not support dismissal of his Equal Protection claim. (Dkt. No. 33-2, at 5–6). In *Frisenda*, a former Lieutenant in the Malverne Police Department brought, among others, claims asserting violations of his First and Fourteenth Amendment rights. 775 F. Supp. 2d at 492. After denying the defendants' motion for summary judgment as to the plaintiff's First Amendment retaliation claim, the court addressed his Equal Protection claim. *Id.* at 517. As Plaintiff notes, the court held that an Equal Protection claim based on a "class of one" theory could not survive summary judgment because such claims are unavailable in the public employer context. *Id.* at 517–18 (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605–07 (2008)). This fact, however, does not warrant reconsideration for at least two reasons. First, Plaintiff's opposition to the motion to dismiss made clear that he was asserting a *LeClair* claim, which is not the same as the *Olech* class-of-one Equal Protection claim that was at issue in *Frisenda*. (*See* Dkt. No. 24, at 23; *see also* Dkt. No. 26, at 35 & n.14 (noting that Plaintiff asserted a *LeClair* claim and that an *Olech* class-of-one claim "has no place in the public employment context"));[3] *see also Hu v. City of New York*, 927 F.3d 81, 91–96 (2d Cir. 2019) (distinguishing between *LeClair* and *Olech* claims). Second, the Court's decision cited a different portion of the *Frisenda* court's analysis of the Equal Protection claim which gave an independent ground for dismissal. (Dkt. No. 26, at 36 (citing *Frisenda*, 775 F. Supp. 2d at 518)). Specifically, the court there stated: "[T]o the extent that plaintiff *also* may be attempting to assert an equal protection claim based upon retaliation for First Amendment activity (rather than under [an *Olech*] class-of-one theory), such a claim is completely duplicative of the First Amendment retaliation claim and, therefore, should not go forward." *Frisenda*, 775 F. Supp. 2d at 518 (emphasis added) (collecting cases).

---

[3] The Court never held that a public employee could not assert a *LeClair* selective enforcement claim.

As discussed above, Plaintiff has not plausibly alleged that any differential treatment he experienced compared to other individuals who complained about the MWAP policy was due to anything other than his First Amendment activity.

The third case the Court cited was *Washington v. Afify*, 968 F. Supp. 2d 532 (W.D.N.Y. 2013). Plaintiff argues the Court's reliance on *Washington* was "misplaced" because there the court found that the plaintiff had not "identified any similarly situated individuals who were treated differently" as required to state an Equal Protection claim, while Plaintiff has alleged similarly situated comparators. (Dkt. No. 33-2, at 6 (citing *Washington*, 968 F. Supp. 2d at 541)). Again, however, the *Washington* court gave an additional reason for dismissing the Equal Protection claim—namely, that the plaintiff's allegations "suggest[ed] that defendants sought to retaliate against plaintiff because of his grievances" and therefore that his allegations were "more properly addressed in the context of his retaliation claims." *Washington*, 968 F. Supp. 2d at 541 (citations omitted). It was this reasoning the Court cited, and whether or not Plaintiff plausibly alleged the existence of comparators was not relevant to the Court's decision.

Finally, Plaintiff cites to a report and recommendation from the Western District of Pennsylvania and the order adopting it. *See Zimmerlink v. Zapotosky*, No. 10-cv-237, 2011 U.S. Dist. LEXIS 53186 (W.D. Pa. Apr. 11, 2011), *report and recommendation adopted by* 2011 U.S. 53189 (W.D. Pa. May 18, 2011).[4] The report and recommendation determined that the plaintiff's *Olech* class-of-one Equal Protection claim was not duplicative of her First Amendment retaliation claim because it could be the case that the retaliation claim failed for lack of causation but that the defendants "nonetheless intentionally treated Plaintiff differently than others similarly situated with no rational basis." *Zimmerlink*, 2011 U.S. Dist. LEXIS 53186, at *24. In a

---

[4] No Westlaw cite is available.

cursory order adopting the report and recommendation, the Western District of Pennsylvania stated that "whether the only conduct plaintiff can prove in support of her Equal Protection claim is duplicative of the activity receiving First Amendment protection is not an appropriate inquiry at [the motion to dismiss] juncture." *Zimmerlink*, 2011 U.S. Dist. LEXIS 53189, at *2. The Court need not consider *Zimmerlink* on Plaintiff's motion for reconsideration, as it is an out-of-Circuit report and recommendation which Plaintiff could have cited in his opposition to the motion to dismiss. In any event, *Zimmerlink* is inapposite as it involved an *Olech* claim—which is premised on differential treatment with no rational basis—and not a *LeClair* claim, which requires consideration of the defendant's subjective motivation. As discussed above, Plaintiff has not plausibly alleged Defendants' improper subjective motivation in treating him differently separate and apart from retaliation for protected First Amendment activity.

In sum, none of Plaintiff's attempts at distinguishing *Best Payphones*, *Frisenda*, and *Washington* is sufficient to show that the Court made a clear error of law. His motion for reconsideration is therefore denied.

### IV. MOTION FOR LEAVE TO AMEND

#### A. Standard of Review

In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may, however, "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 50 (2d Cir. 1991)). In making this determination, the court must "consider 'the proposed amendment[s] . . .

along with the remainder of the complaint,' accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Id.* (internal citation omitted).

    **B.**    **Analysis**

Plaintiff seeks leave to file an amended complaint which (1) maintains his claims against DOCCS and adds a request for reinstatement to his previous position as Facility Director of the Walsh Regional Medical Unit, (2) adds allegations intended to address the personal involvement of Defendant Parkmond, and (3) includes additional factual allegations to address certain "concerns raised by the Court" regarding Plaintiff's First Amendment claim. (Dkt. No. 31, at 2; *see* Dkt. No. 31-2 (proposed amended complaint)).

    **1.**    **DOCCS**

In its decision on Defendants' motion to dismiss, the Court held that Plaintiff's Section 1983 claims against DOCCS were barred by sovereign immunity under the Eleventh Amendment. (Dkt. No. 26, at 14–15). Plaintiff now seeks leave to amend the complaint to add a request for reinstatement to his previous position as Facility Director. (Dkt. No. 31, at 2). Plaintiff argues that reinstatement is "prospective injunctive relief that may be ordered against government employees sued in their official capacities under the *Ex Parte Young* exception to the Eleventh Amendment's sovereign immunity bar." (*Id.*). Defendants respond that, while the *Ex parte Young* exception allows a claim for prospective injunctive relief to be brought against individual state officers sued in their official capacities in certain circumstances, it has no applicability to claims brought against DOCCS itself, which remain barred. (Dkt. No. 36, at 11–13). The Court agrees.

    Sovereign immunity bars a suit in federal court against a state, absent the state's consent to suit or congressional abrogation of immunity. *See Seminole Tribe of Fla. v. Florida*, 517 U.S.

44, 54–55 (1996). However, under the exception to this rule set forth in *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (citation omitted). While this exception allows a plaintiff to seek prospective injunctive relief from a state official sued in his or her official capacity who has authority to effectuate that relief, claims against the state itself remain barred. *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *5, 2021 U.S. Dist. LEXIS 209018, at *13 (N.D.N.Y. Oct. 29, 2021) (noting that the exception under *Ex parte Young* for prospective injunctive relief "only contemplates action brought against individual defendants in their official capacities, and 'has no application in suits against the States and their agencies, which are barred regardless of the relief sought'" (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993))). Thus, Plaintiff's claims against DOCCS itself, regardless of the relief sought, are barred as a matter of law by sovereign immunity. Plaintiff's request for leave to amend the complaint to assert a claim for prospective injunctive relief against DOCCS is therefore denied as futile.

      While the complaint asserted no official capacity claims, Plaintiff's proposed amended complaint also seeks to assert claims against Defendants Morley, Dinello, Henderson, and Parkmond in their official and individual capacities. (Dkt. No. 31-2, ¶¶ 13–16). Defendants do not address these proposed amendments. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S.

635, 645 (2002) (citation omitted). While the Second Circuit has held that "claims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar" as prospective injunctive relief, *Rowland*, 494 F.3d at 96 (collecting cases), it is not clear that Plaintiff has alleged an ongoing violation of his First Amendment rights. *Compare id.* at 96–97 (holding that the alleged violation of federal rights was "ongoing" where the plaintiffs were wrongfully terminated and the state failed to re-hire them or create new positions, because the state's failure to act was "both (1) ongoing and (2) potentially curable by prospective relief"), *with Blamah v. New York*, No. 19-cv-9234, 2020 WL 1812690, at *5, 2020 U.S. Dist. LEXIS 62319, at *12 (S.D.N.Y. Apr. 8, 2020) ("[A] plaintiff who merely asserts she has suffered discrete acts of past discrimination and retaliation by [a] defendant has not demonstrated an ongoing constitutional violation." (citation and internal quotation marks omitted)). However, because the parties have not addressed this issue, the Court declines to say as a matter of law that the proposed request for reinstatement does not fall within the *Ex Parte Young* exception to the Eleventh Amendment's bar and is futile. Plaintiff may therefore amend his complaint to assert claims against the individual Defendants in their official capacities and to seek reinstatement.

### 2.   Parkmond

The Court dismissed Plaintiff's First Amendment claim against Defendant Parkmond for failure to allege her personal involvement. (Dkt. No. 26, at 34–35 (noting that the complaint's sole allegation relating to Parkmond was that, in mid-2019 and as a result of Plaintiff's "continued opposition to the MWAP policy," she "ordered nurses to withhold assistance from Dr. Salvana for several patients"); *see* Dkt. No. 1, ¶ 123). Plaintiff now seeks leave to add factual allegations detailing Parkmond's personal involvement "in the retaliatory actions taken against" him. (Dkt. No. 31, at 2). Specifically, the proposed amended complaint alleges that Parkmond

"began to develop animosity" toward Plaintiff after his "complaint to Defendant Dinello about Defendant Henderson's decision to cancel his prescribed treatment to his patients." (Dkt. No. 31-2, ¶ 130). Parkmond "allowed nurses that she supervised to act in an insubordinate manner toward Dr. Salvana, which included treating him with disrespect and refusing to assist him with patient care." (*Id.* ¶ 131). The proposed amended complaint further alleges that Parkmond, "with the knowledge and consent of Defendant Henderson, prohibited nurses from assisting Dr. Salvana on the treatment of a hemophiliac patient." (*Id.* ¶¶ 133, 136). Defendants argue that Plaintiff's proposed amendments with regard to Parkmond are insufficient to plausibly allege her personal involvement because (1) they are conclusory, (2) failure to properly supervise subordinates is insufficient to plead personal involvement as a matter of law, and (3) any actions Parkmond took to enforce the MWAP policy are insufficient to plead personal involvement because enforcement of the policy does not constitute an adverse action. (Dkt. No. 36, at 14).[5]

      The Court concludes that Plaintiff's new allegations with respect to Parkmond are sufficient to plausibly allege her personal involvement in the alleged violation of his First Amendment rights. Taken together, the allegations are not impermissibly conclusory, and they give an indication of how Parkmond became aware of Plaintiff's alleged protected speech. (*Cf.* Dkt. No. 26, at 34 (noting that the complaint did not allege "how Parkmond became 'aware' of [Plaintiff's] opposition to the MWAP policy")). Second, the proposed amendments allege more than simply failure to properly supervise subordinates, but rather that Parkmond affirmatively acted in allowing her subordinates to behave insubordinately toward Plaintiff and "prohibit[ing]" them from assisting Plaintiff with patient treatment. These allegations are sufficient to plausibly plead Parkmond's personal involvement in the alleged constructive discharge and creation of

---

[5] Plaintiff does not offer any legal analysis of the sufficiency of the proposed amendments.

intolerable working conditions, and do not seek to hold Parkmond liable solely by virtue of her supervisory position. *Cf. Zielinski v. Annucci*, 547 F. Supp. 3d 227, 239 (N.D.N.Y. 2021) (noting that inferring the personal involvement of a defendant by virtue of his supervisory position is "precisely the kind of inference about supervisory officials held impermissible" in *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)). Finally, the allegations regarding Parkmond concern the treatment of a hemophiliac patient; there is nothing to suggest that the treatment of this patient involved mere enforcement of the MWAP policy.

Accordingly, the Court grants Plaintiff's motion for leave to amend as it relates to Parkmond.

### 3. Remaining Proposed Amendments

The remaining proposed amendments, which Defendants do not address, consist of additional factual allegations which Plaintiff asserts remedy "concerns raised by the Court" in relation to Plaintiff's First Amendment claim. (Dkt. No. 31, at 2; *see generally* Dkt. No. 31-2). Because the proposed amendments are simply additional factual allegations relating to the surviving First Amendment claim, the Court grants Plaintiff's motion for leave to amend.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for reconsideration (Dkt. No. 33) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for leave to file an amended complaint (Dkt. No. 31) is **DENIED** to the extent it seeks to assert any claim against DOCCS; and it is further

**ORDERED** that Plaintiff's motion for leave to file an amended complaint is otherwise **GRANTED**; and it is further

**ORDERED** that Plaintiff is directed to file the proposed amended complaint, in conformance with the above, by November 28, 2022.

**IT IS SO ORDERED.**

Dated: <u>November 18, 2022</u>
      Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge